QUINCY SAWYER et als. v. JOHN S. NORTHAN et als.

*Purchase for Minor, validity of—Agency—Mortgage for Purchase-money.*

1. An alleged contract of purchase made by a minor (whose infancy is undisclosed) or by one pretending to act as his agent, under an agreement to mortgage the land back to secure the purchase money, is a nullity.

2. Where in an action to recover the possession of land it appeared that C., intending, but not disclosing his purpose, to act as agent for his minor son, C., Jr., purchased the land from F., the defendant's grantor, under an agreement to reconvey the land by way of mortgage to secure the purchase-money, and F., supposing that he was dealing with C., executed the deed to him and C. caused the abbreviation "Jr." to be added after his own name and had the deed so recorded, at the same time executing notes and mortgage in his own name to F., to secure the purchase-money: *Held*, that a conveyance by "C., Jr.," or his heirs to plaintiff, who had knowledge of all the facts, did not divest F.'s title to the lands.

CIVIL ACTION for the recovery of land, tried before *Bryan, J.,* and a jury at Spring Term, 1891, of HYDE Superior Court.

During the pendency of the action George Credle acquired from the plaintiff Sawyer his interest in the land with knowledge of the pendency of the action and of the equities set up by the defendants, and before the trial was substituted as plaintiff in place of Sawyer.

The plaintiff claimed title under deeds from the heirs of Thomas F. Credle, Jr., who died during infancy, and a deed from O. C. Farrar to said Credle, Jr. He also offered in evidence a mortgage executed by *Thomas F. Credle* to O. C. Farrar covering the *locus* and dated July —, 1872, and duly recorded.

The defendant claimed under a deed made to him by
O. C. Farrar and wife in January, 1879, reciting a sale of
the land under the mortgage by T. F. Credle to said Farrar;
which mortgage, as the answer alleged, was made contem-
poraneously with the deed from Farrar to Credle, Jr., to
secure the purchase-money notes for $600. The answer
alleged that during these transactions the said Thomas F.
Credle, Jr., was an infant and died before attaining his
majority, and that the said O. C. Farrar was ignorant of the
fact that he was dealing with an infant, but on the contrary
believed that he was dealing with an adult capable of con-
tracting; that at the time of his purchase, and the payment
by him of the purchase-money to the said O. C. Farrar, the
defendant was ignorant of the fact that the mortgage under
which he purchased was executed by an infant, and, on the
contrary, supposed it to have been executed by the father of
the said Thomas F. Credle, Jr., who bore exactly the same
name, and in whom he supposed the title was. The more
so that in signing the mortgage, the addition of "Jr." was
omitted. That upon the death of the said Thomas F.
Credle, Jr., his real and personal estate descended and came
to his two sisters, and a brother since dead, and the plain-
tiff purchased by deed from the two sisters, dated the ——
day of ——, 1880, and had full notice of all the facts here-
inbefore set forth, previous to his said purchase.

George Credle testified: "I am the present plaintiff, and
I acquired my interest since the institution of this action.
I had personal knowledge of the pendency of this action.
I had knowledge of the equities set up by the defendant,
and I had that knowledge at the time of my purchase."

H. W. Wahab testified: "I sold the land under the mort-
gage from Credle to Farrar, as agent for Farrar, to a man
named Sadler, he being the highest bidder. Sadler trans-
ferred his bid to defendant John S. Northan. I was not

acquainted with the facts in this case until after suit was brought. The lands are the same that were conveyed by O. C. Farrar to Thomas F. Credle, Jr." The mortgage notes were shown to the witness, and he states "that these were the notes secured by the mortgage under which I sold as agent of Farrar."

It was admitted that Thomas F. Credle, Jr., was an infant in 1872, and died during his infancy.

The defendants offered the following evidence:

Deposition of O. C. Farrar admitted by consent, which is as follows, to-wit: "Soon after the close of the late war I purchased the lands described in the complaint of Thomas F. Credle, then a man of fifty years of age or thereabouts; in 1872 this same Thomas F. Credle applied to me in person to resell him the land, which I did. I made the deed in the manner suggested by said Credle, and took what I supposed to be a mortgage from the said Credle, to whom I had sold. I did not then know that there was a Thomas F. Credle, Jr.; I never saw Thomas F. Credle, Jr., so far as I am aware of, and I never had any transactions with any minor of that name, and I never knew that Thomas F. Credle had a son of that name until the institution of this action, and believed that I was selling to and taking a mortgage from Thomas F. Credle, who had formerly owned the land."

The defendant John S. Northan testified: "I am one of the defendants; I bought the land under the mortgage; I was not present when the mortgage was signed; I have seen the mortgage and sent it to O. C. Farrar; it was signed Thomas F. Credle; I took possession of the land at the time I purchased it, and have been since that time in possession."

George Q. Credle testified: "I was a witness to the mortgage from Thomas F. Credle to O. C. Farrar; there were

two Thomas F. Credles; Thomas F. Credle, Sr., signed the mortgage; the notes secured by the mortgage were signed by Thomas F. Credle, Sr.; I know his handwriting; I know when the deed was made to Thomas F. Credle, Jr.; he was then about twelve years old; he died when he was about fifteen years old."

Upon cross-examination witness stated: "I think the deed and the mortgage were made at the same time; O. C. Farrar did not live in Hyde county; Thomas F. Credle, Sr., and his son, Thomas F. Credle, lived in Hyde county; I am pretty sure that Farrar knew that Credle had a boy, Thomas F. Credle, Jr."

The issues submitted to the jury and the responses thereto were as follows:

1. Did the present plaintiff, Credle, have notice before his purchase of the fact set forth in the answer?   Yes.

2. Did the original plaintiff, Sawyer, have notice of defendant's equities before he purchased the lands in dispute?   Yes.

3. Did W. H. Wahab have notice of defendant's equities before he acquired his interest?   Yes.

4. Were the sale of the land to T. F. Credle, Jr., and the mortgage given to secure the purchase-money contemporaneous acts?   Yes.

5. Did O. C. Farrar know at the time of the execution of the deed to T. F. Credle, Jr., and the execution of the mortgage to secure the purchase-money, that he was contracting and dealing with an infant?   No.

6. Was the mortgage under which the land was sold signed and executed by Thomas F. Credle, Jr.?   No.

7. Did O. C. Farrar at the time of the making of the deed to Thomas F. Credle, Jr., know that said Thomas F. Credle, Jr., was an infant?   No.

8. Did Thomas F. Credle, Jr., authorize Thomas F. Credle to sign said mortgage for him? No.

Upon the findings of the jury the plaintiff moved for judgment that he be declared the owner of the land and for possession, which was refused.

Defendant moved—

1. That the Court should render judgment upon the said finding, declaring that the plaintiff was not the owner of the land or entitled to recover possession thereof.

2. That upon said finding the Court should render judgment declaring that John S. Northan was subrogated to the rights of O. C. Farrar to the full extent of the mortgage debt, with interest thereon as specified in the mortgage, and declare the same a lien upon the land.

3. That the Court should render judgment in favor of John S. Northan for the sum of three hundred dollars, with interest from July, 1879, and declare the same a first lien upon the land, and render judgment in favor of O. C. Farrar for the balance of the original purchase-money, with interest according to the notes and mortgage, and declare same a second lien upon the land.

4. That the Court should render judgment in favor of John S. Northan for the sum of three hundred dollars purchase-money paid by him, with interest on the same from January, 1879, and declare the same a lien upon the said land.

The Court rendered its judgment as follows:

"1. That the plaintiff Credle is not entitled to recover the land described in the complaint without first paying the purchase-money set forth in the deed dated the 15th of January, 1879, to-wit, the sum of three hundred dollars.

"2. That the said sum of three hundred dollars is a charge upon the land described in the complaint.

"3. That the said Credle is entitled to the possession of said lands upon the payment of the amount herein declared as a lien thereon.

"4. That if the said Credle fails to pay to the defendant Northan the said sum of three hundred dollars within ninety days after the expiration of the present term of this Court, then the commissioner hereinafter appointed is directed to sell said land at the court-house door in Swan Quarter, for cash, after giving thirty days' notice of such sale, and execute title to the purchaser, and out of the proceeds of such sale pay to the defendant Northan the said sum of three hundred dollars.

"5. That defendant recover costs, etc."

From the judgment the plaintiffs and defendants appealed.

*Messrs. J. H. Small* and *W. B. Rodman,* for plaintiffs.
*Mr. C. F. Warren,* for defendants.

CLARK, J.: The transaction, in the light most favorable to the plaintiff, and leaving out of view all circumstances tending to prove fraud, is that Thomas F. Credle, intending to act as agent for his son, Thomas F. Credle, Jr., bought the lands of O. C. Farrar with an agreement to mortgage the same for the purchase-money; that his son was a minor, twelve years of age, and hence incapable of appointing an agent; that the minority of the son was not made known to Farrar, who supposed, indeed, that he was conveying to Thomas F. Credle, from whom he had originally bought the land; that said Thomas F. Credle, after receiving the deed in which he caused the abbreviation "Jr." to be written after the name of Thomas F. Credle, as the grantee named therein, did execute a mortgage on the land covered by the deed and mortgage notes, for the full amount of the purchase-money, all of which he signed in his own name.

The jury find that the purchase and the mortgage back were contemporaneous acts and, of course, parts of the same transaction. The mortgage could have no validity because executed by one to whom the land had not been conveyed. But the deed was equally invalid and conveyed no title because it was merely a part of a transaction, which whole transaction was of no effect since Thomas F. Credle (assuming his good faith) had no authority, and could have none, to enter into such contract as agent for a minor.

It is true land can be conveyed to a minor, but when an alleged contract of purchase is made by a minor (whose infancy is undisclosed) under an agreement to mortgage the land 'back to secure the purchase-money, the whole transaction is a nullity since he cannot execute the mortgage and there is no contract. One attempting to act as agent for him is in no better condition, for the minor could neither appoint an agent nor empower him to make a mortgage which he could not make himself. The conveyance is also a nullity, because the conveyance back by the grantee by way of mortgage which was a part of the contract, and the basis upon which it was made, was never executed. If the deed by Farrar had conveyed any title, there being a failure by the grantee to give a valid mortgage as agreed, Farrar retained the equitable title, or real title, since he could call for a reconveyance.

In *Bunting* v. *Jones,* 78 N. C., 242, where there was a conveyance of land and a contemporaneous agreement for a mortgage back to secure the purchase-money, but the purchaser's wife refused to join in the mortgage, it was held that no title vested in the grantee, and his wife acquired no dower or homestead rights. In this case, as in that, it might well be said, "it was not intended to give the land to the party, and he has not given anything for it." That

case has been cited and approved in *Moring* v. *Dickerson,*
85 N. C., 466, and *Burns* v. *McGreggor,* 90 N. C., 222.

If here a valid mortgage back had been executed, the
subsequent sale thereunder and the conveyance to the pur-
chaser would have divested all rights of the plaintiff,
who claims under the minor. As the mortgage was not
executed as agreed, the contract was not carried out, what
purports to be a deed to the minor conveyed no title, and
the whole transaction was a nullity *ab initio.* No question
of the rights of third parties can arise, as the plaintiff and
all under whom he claims are fixed with knowledge of
the facts. Certainly, as between the parties, the title was
not divested from O. C. Farrar by such attempted convey-
ances; and if the subsequent conveyance from Farrar to the
defendant has validity, it is because the title still remained
in him, and not because he attempted to convey as mort-
gagee under a power of sale in an invalid mortgage.

The Court should simply have given judgment against
the plaintiff and in favor of the defendant for the land and
for costs. This disposes of both appeals. The defendant
will recover costs in both appeals in this Court.

Error.